<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| FRANCISCO ROSARIO, | : | |
| | : | Civil Action No. 03-0550 (KSH) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ROY L. HENDRICKS, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner <u>pro se</u>                        Counsel for Respondents
Francisco Rosario                      Paula T. Dow
New Jersey State Prison                Essex County Prosecutor
290257/SBI#173712B                     Essex County Courts Building
P.O. Box 861                           Newark, NJ 07102
Trenton, NJ 08625

**HAYDEN**, District Judge

        Petitioner Francisco Rosario, a prisoner currently confined at New Jersey State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Roy L. Hendricks and the Attorney General of the State of New Jersey.

        For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Appellate Division.[1]

> Martin Martinez (Martinez) owned a store at 112
> Sheppard Avenue in Newark, and lived with his family on
> the second floor above his store.  There were six other
> apartments in this building.  Since 1994, Candelario
> Jiminez (Jiminez) lived in the basement apartment.
>
> On July 4, 1996, at approximately 2:00 a.m.,
> Martinez was awakened when he heard Jiminez scream
> "Francisco hit me."  Martinez looked out his bedroom
> window and saw defendant, as well as Jiminez outside
> near the entrance to the apartment building.  He
> observed defendant enter his van, which was parked
> across the street, and leave the area.  Martinez called
> the police and told the Jiminez family what had
> occurred, requesting that they call for an ambulance.
>
> Martinez went outside where he found Jiminez
> standing but unable to walk.  Jiminez told Martinez
> that Francisco hit him in the head and back with a
> baseball bat.  Martinez helped Jiminez to his room in
> the basement, with the police and medical personnel
> arriving fifteen minutes later.
>
> Officers Lisa Sanchez and Michael Burwell of the
> Newark Police Department arrived at the scene at around
> 2:40 a.m.  Upon arrival, they observed Jiminez in a
> crouched position near the wall in his basement
> apartment covered in blood.  Jiminez was unable to
> speak and smelled of alcohol.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

2

Emergency medical personnel Ennis Terrell attended to Jiminez, who was disoriented, unable to speak, covered in blood and appeared intoxicated.  Jiminez was transported to the University Hospital Trauma Center in Newark.  Jiminez died at approximately 3:00 p.m. on July 4, 1996 at the University Hospital.

On July 5, 1996, Dr. Rudolph Platt performed an autopsy of Jiminez.  The autopsy revealed that Jiminez sustained a fractured skull, two large lacerations of ht left side of his head caused by blunt trauma, hemorrhaging on the surface of his brain, multiple bruises on his brain, all caused by blunt impacts, swollen eyes and bloodied eyelids, lacerated kidneys causing the removal of his left kidney, various bruises on his shoulders, chest, back, hands, a fractured leg and three fractured ribs, and contusions on his small and large bowels.  Dr. Platt observed that the bruises on his hands, shoulders and back were produced by [an] elongated blunt instrument consistent with the shape of a baseball bat.

At the time of death, Jiminez's blood alcohol level was .25%, an amount of alcohol that, according to Dr. Platt, could have been deadly if ingested by an adult who was not used to drinking liquor.

Testifying at trial Dr. Platt, stated, in his opinion, the cause of death was multiple blunt trauma to the head, chest, abdomen and extremities.  He determined that the manner of death was a homicide.

On July 4, 1996, after Jiminez was pronounced dead, Investigator Lonnie Hinton of the Essex County's Prosecutor's Office and Detective Joseph Satnowski, a Newark Homicide Officer, met with and took a statement from Martinez at the police station.  As a result of Martinez's statement and identification of defendant from a photographic array as depicting the person whom he had seen by the victim and enter the van, Investigator Hinton obtained a warrant for defendant's arrest.

The following morning at approximately 5:30 a.m., Investigator Hinton arrived at defendant's address. After observing defendant's van parked outside, Hinton advised the Newark police of defendant's whereabouts.

3

The officers knocked on the door and were allowed entrance by Sammy Rivera, a short-term resident, who told the officers that defendant was upstairs in his bedroom.  When defendant opened his bedroom door, Investigator Hinton informed him that he was there to arrest him for the murder of Candelario Jiminez. Initially, defendant appeared to have understood what Investigator Hinton was saying because he obeyed Hinton's instructions.  After Hinton reiterated that defendant was under arrest for murder and began to mirandize him, defendant indicated that he did not understand English.

Investigator Hinton contacted the Newark police station, requesting that a Spanish-speaking officer come to defendant's residence.  Office Carmensita Dellavalla arrived and read the <u>Miranda</u> form to defendant, translating it from English to Spanish. Defendant indicated that he understood the waiver form and signed it.  After the waiver form had been signed, Officer Dellavalla read a Consent-to-Search form to defendant, again translating it from English to Spanish.  Defendant then signed to Consent-to-Search form, permitting the officers to search defendant's van and apartment.

The officers searched defendant's van, finding a baseball bat.  Blood on the bat was tested and found to be decedent's blood type.  A search of defendant's apartment did not reveal anything incriminating.

When initially questioned in Spanish concerning the incident, defendant denied knowing either Jiminez or Martinez and denied being in the area during the altercation.  Defendant claimed that he had been home on the evening of the incident.  Defendant was then taken to the police station for further questioning.

After a statement had been taken from Rivera, defendant was once again mirandized in Spanish. Eventually, defendant admitted that he had attacked Jiminez with a bat, but indicated that the attack was done in self-defense.  Defendant stated that Jiminez had a knife.  In a typed statement, defendant state that two days prior to the incident Jiminez threatened to stab him with a knife and that "when [Jiminez] gets drunk he turns [violent] like that."  On the night of the altercation, defendant went to a bar where he

attempted to court a woman and later drove to
Martinez's apartment to visit Martinez.  Upon arriving,
defendant said that he and Jiminez began to argue and
that Jiminez pulled out a knife.  As a result,
defendant went to his van and got his bat.  Defendant
further stated that when Jiminez attempted to stab him
with the knife, he hit Jiminez with his bat knocking
the knife out of his hand.  After that, defendant
indicated that he kept hitting Jiminez with the bat for
pulling the knife on him.

Defendant's trial testimony essentially
corresponds to the statement obtained at the police
station.  Defendant acknowledged hitting Jiminez with a
baseball bat.  Elaborating, defendant stated that he
was inside the van when Jiminez, who was visibly
intoxicated, pulled out a knife.  Instead of fleeing in
the van, defendant remained outside after he had pushed
Jiminez with the van door.  According to defendant, he
did not believe that he had enough time to flee in the
van and had to defend himself.  The knife that [he
said] Jiminez [] used during the altercation was never
recovered.

(Answer, Ex. E.)

B.  Procedural History

Petitioner was charged with first-degree murder, in
violation of N.J.S.A. 2C:11-3a(1) and (2) (Count One), fourth-
degree possession of a weapon (a baseball bat) under
inappropriate circumstances, in violation of N.J.S.A. 2C:39-5d
(Count Two), and third-degree possession of a weapon, a baseball
bat, for an unlawful purpose, in violation of N.J.S.A. 2C:39-4d
(Count Three).  Tried by a jury in the Superior Court of New
Jersey, Law Division, Essex County, Petitioner was convicted of
the lesser included offense of aggravated manslaughter, embodied
in the murder charge, and of both of the weapons offenses.  The

trial court sentenced Petitioner to a 30-year imprisonment term with a fifteen-year parole disqualifier on the manslaughter conviction, a consecutive 18-month term on Count Two, and a concurrent five-year term on Count Three.  Except to remand to amend the judgment of conviction to vacate the sentences on Counts Two and Three and merge them into Count One, the Superior Court, Appellate Division, affirmed by Opinion filed February 11, 1999.  On May 12, 1999, the Supreme Court of New Jersey denied certification.

Petitioner's state-court petition for post-conviction relief was denied by the trial court on January 6, 2000.  The Appellate Division affirmed the denial of relief by Opinion filed May 14, 2002.  The Supreme Court of New Jersey denied certification on November 15, 2002.

On February 4, 2003, this Court received this Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which is dated January 31, 2003.  Petitioner asserts that he is entitled to relief because (a) the trial court improperly charged the jury, following their question regarding the various forms of homicide, (b) the trial court erred by instructing the jury on murder and denying Petitioner's motion for acquittal on the murder charge, because the State had not proven he either knowingly or purposely intended to kill or seriously injure the victim, (c) trial counsel provided ineffective assistance by

failing to object to the erroneous jury charges and by failing to present an insanity defense, and (d) appellate counsel provided ineffective assistance by failing to raise on appeal the jury-charge claim and a claim related to inadequate translations during trial.  Respondents have answered and this matter is now ready for decision.

II.  <u>28 U.S.C. § 2254</u>

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the

7

governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v.

<u>Janecka</u>, 302 F.3d 107, 116 (3d Cir. 2002) (<u>citing</u> <u>Weeks v.</u>
<u>Angelone</u>, 528 U.S. 225, 237 (2000)).  With respect to claims
presented to, but unadjudicated by, the state courts, however, a
federal court may exercise pre-AEDPA independent judgment.  <u>See</u>
<u>Hameen v. State of Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000),
<u>cert. denied</u>, 532 U.S. 924 (2001); <u>Purnell v. Hendricks</u>, 2000 WL
1523144, *6 n.4 (D.N.J. 2000).  <u>See also</u> <u>Schoenberger v. Russell</u>,
290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and
cases discussed therein).

     The deference required by § 2254(d) applies without regard
to whether the state court cites to Supreme Court or other
federal caselaw, "as long as the reasoning of the state court
does not contradict relevant Supreme Court precedent."  <u>Priester</u>
<u>v. Vaughn</u>, 382 F.3d 394, 398 (3d Cir. 2004) (citing <u>Early v.</u>
<u>Packer</u>, 537 U.S. 3 (2002); <u>Woodford v. Visciotti</u>, 537 U.S. 19
(2002)).

     Although a petition for writ of habeas corpus may not be
granted if the Petitioner has failed to exhaust his remedies in
state court, a petition may be denied on the merits
notwithstanding the petitioner's failure to exhaust his state
court remedies.  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Lambert v.</u>
<u>Blackwell</u>, 387 F.3d 210, 260 n.42 (3d Cir. 2004); <u>Lewis v.</u>
<u>Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).

9

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).]

III.   <u>ANALYSIS</u>

A.   <u>Sufficiency of the Evidence</u>

Petitioner contends that the trial court erred by instructing the jury on murder and denying his motion for acquittal on the murder charge, because the State had not proven he either knowingly or purposely intended to kill or seriously injure the victim.

A claim that the jury's verdict was against the weight of the evidence raises a due process concern.  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law."

10

Jackson, 443 U.S. at 324, n.16.   See also Orban v. Vaughn, 123

F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).   As

noted above, state court factual determinations are presumed to

be correct.   See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir.

2000).

    In response to Petitioner's argument on direct appeal, the

Appellate Division found as follows:

> Defendant argues in Point I that the trial court
> erred in denying defense counsel's motion for a
> judgment of acquittal as to Count One of the indictment
> charging murder.   According to defendant, a review of
> the evidence adduced at trial demonstrates, at most,
> that defendant acted recklessly rather than with the
> intent to support a murder charge.   Defendant relies
> upon the following evidence to support his claim:   the
> victim was intoxicated and threatened defendant with a
> knife; the victim would become violent when
> intoxicated; the victim was generally known to carry a
> knife; defendant feared the victim due to a prior
> incident where the victim had accosted defendant while
> armed with a knife; the victim was able to walk to his
> apartment with assistance after the incident; and the
> victim only suffered two injuries to the head area.
>
> Defendant's argument is unpersuasive.   A
> defendant's motion for a judgment of acquittal should
> be denied where there is sufficient evidence to warrant
> a conviction.   State v. Brown, 80 N.J. 587, 591 (1979).
> The basic test in challenging the sufficiency of the
> evidence is whether, viewing the State's evidence in
> its entirety and giving the State the benefit of all
> reasonable and legitimate inferences drawn therefrom, a
> reasonable jury could find the defendant guilty of the
> charge beyond a reasonable doubt.   Ibid.   Here, there
> was sufficient evidence adduced at trial to support a
> first-degree murder charge.
>
> Criminal homicide constitutes first-degree murder when:
>
> (1) The actor purposefully causes death or
> serious bodily injury resulting in death; or

11

(2) The actor knowingly causes death or serious bodily injury resulting in death;

[N.J.S.A. 2C:11-3a(1) and (2)].

A murder conviction based upon "knowing" conduct can result from conduct which is practically certain to cause serious bodily injury when death is a result of the injury caused.  With respect to the murder charge, the trial court instructed the jury that if they found beyond a reasonable doubt that defendant purposefully caused the death, or such serious bodily injury which was likely to result in death, and did not act in the heat of provocation, they should find defendant guilty of murder.  In continuing with the murder charge, the trial court stated that a person causes another's death knowingly when that person is aware that his or her conduct will cause either death or such serious bodily that death is a likely result.  Further, the trial court instructed that the nature of a person's intent was a question of fact to be determined by the jury.

Defendant beat the victim in the head, chest and abdomen with a baseball bat, causing him to suffer multiple blunt trauma, which, according to the testifying forensic pathologist, was the cause of death.  The medical evidence describing the nature and severity of the victim's injuries supported a charge that the defendant was aware that his conduct would either cause the victim's death or such serious bodily injury that death was a likely result.  See State v. Rue, 296 N.J. super. 108, 116 (App. Div. 1996) (finding that even if defendant began beating the victim with the intention of scaring him, the continued striking of the victim's skull, which was split open and pulsating with blood thus evidencing catastrophic injury, revealed that defendant intended to cause the victim serious bodily injury or death), certif. denied, 148 N.J. 463 (1997).

Under these circumstances, the fact that the jury found the defendant guilty of the lesser included offense of aggravated manslaughter and not first-degree murder did not result in prejudice to defendant. Defendant cites State v. Christener, 71 N.J. 55 (1976), in support of his contention that defendant's conviction must be reversed.  Defendant's reliance on Christener is misplaced.  In Christener, the trial

12

> court instructed the jury on the offense of first-
> degree murder, a charge for which there was an
> insufficient evidentiary basis.  <u>Id.</u> at 69-74.  Here,
> however, there was ample evidence to support a first-
> degree murder charge.  There was no error in submitting
> the first-degree murder charge to the jury.

(Answer, Ex. E.)

The decision of the state court was neither contrary to nor an unreasonable application of federal law.  Petitioner is not entitled to relief on this claim.

B.    <u>Jury Instructions</u>

Petitioner contends that the trial court improperly instructed the jury, following their question regarding the various forms of homicide, on the difference between aggravated manslaughter and reckless manslaughter.

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process."  It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated

13

in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).  "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

14

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 124 S.Ct. 1830, 1832 (2004) (internal

quotations and citations omitted).

Here, the trial court instructed the jury at length as to

the various types of homicide.  (Answer, 4T.)  During

deliberations, the jury sent the trial court a note:  "Please

explain the difference between the counts in language we

understand.  One, passion/provocation.  Two, murder.  Three,

aggravated manslaughter, and four reckless manslaughter."

(Answer, 4T at 86.)  The court gave the jury the following

instruction:

> Unfortunately, I have read to you the language as
> it is in the law.  I'll try to define it as clearly as
> I possibly can, and then if you have further questions,
> feel free to come back.
>
> In the first place, murder is a charge wherein the
> person is guilty of murder if he purposely causes the
> death or serious bodily injury resulting in death or
> knowingly causes such death or serious bodily injury
> with result of death.  But before you can consider
> murder which is the top line, put it that way, you see
> each has a separate degree which may result in separate
> punishment.  You must consider whether or not the
> killing or the death was as a result of some passion or
> provocation.  And I explained where passion and
> provocation did come from, and what it is and what it
> is not.  If you want me to define that more fully,
> don't be afraid to ask that.  So before you consider
> murder itself, you must find out whether that crime,
> homicide, was as a result o that passion/provocation.

15

If you find that it was not caused as a result of provocation, or passion, then you consider murder itself which means, again, as I have defined it for you.  Merely purposely causing the death or knowingly causing such death.  Then, if you are satisfied it may not be murder itself, then you have a right to go to a lower degree which will then be aggravated manslaughter.

And aggravated manslaughter is where -- where the person is guilty of reckless manslaughter if that person recklessly causes the death, but in doing that, the person does so recklessly when he substantially disregards a substantial and unjustifiable risk that death will result, and unjustifiable risk that death will result, and that the death was caused by the defendant under circumstances manifesting extreme indifference to human life.  In other words, whether the person cared whether he lived or died.

And then, if you're not satisfied that it was aggravated manslaughter, then you have a right to consider a lower degree, which is reckless manslaughter, and recklessness as I defined it for you. If the person recklessly causes such death, or under -- under which he disregards a substantial and unjustifiable risk that death will result from his conduct.

Risk must be of such nature and degree in considering the nature and purpose of a person's conduct, and circumstances known to him, that his disregard of that life is a gross deviation from standard of conduct that a reasonable person would follow.  So those are the four definitions.

Namely, murder, but before you go to that point, you have to decide whether or not that death was caused as a result of some passion or provocation.  If you find it was not caused as a result of that provocation, then determine whether it was murder.  If you're satisfied it was not a knowing and purposeful murder, then you go to aggravated manslaughter; and, then, finally reckless manslaughter.  After that, if you find there are other questions, come back and I'll do my best.

16

(Answer, 4T at 86-89.)   The jury sent the court other questions during its subsequent deliberations, but none involving the homicide counts.

The state PCR court found that there was no error in the jury charge.   (Answer, 6T.)   The Appellate Division agreed.   "The judge properly explained the difference between aggravated and reckless manslaughter in terms of the probability of death as opposed to the possibility of death."   (Answer, Ex. H.)

The conclusion of the state court is neither contrary to nor an unreasonable application of federal law.   The state court found that the instructions complied with state law.   The instruction clearly differentiated between aggravated and reckless manslaughter, and the jury sought no further clarification.   There is evidence that an ambiguous instruction was applied by the jury in a manner which deprived Petitioner of his constitutional rights.   Petitioner is not entitled to relief on this claim.

C.   <u>Ineffective Assistance of Counsel</u>

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."   U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel."   <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

17

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Strickland at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

The Performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are

18

reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

1.    Trial Counsel

Petitioner alleges that trial counsel provided ineffective assistance by failing to object to the erroneous jury charges and by failing to present an insanity defense.  This Court has

19

already determined that there was no error with respect to the jury charges, so trial counsel cannot have been ineffective for failing to raise those meritless claims.  See <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999) (under <u>Strickland</u>, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument").

Petitioner bases his contention that his counsel should have pursued an insanity defense on the comment of an acquaintance, Mr. Rivera, in a police interview, that "I [feel] something is wrong with Francisco, he talks to himself, if he drops a spoon he goes crazy."  (Answer, Ex. F at Da50.)  The Appellate Division rejected this claim.

> There was a wholly insufficient basis to even pursue a potential defense of insanity or diminished capacity on the mere comment of Samuel Rivera.  At trial, defendant claimed he acted in self-defense.  In support of that defense, defendant's mother and brothers testified at trial that defendant was a peaceful person; they did not indicate or suggest defendant had any psychological pr psychiatric problems that could have been the basis for a mental capacity defense.  Defendant has failed to establish that defense counsel's performance was deficient.

(Answer, Ex. H.)

The Appellate Division's conclusions are not contrary to nor an unreasonable application of the governing federal law.  Nor is the Appellate Division's conclusions based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceedings.  Petitioner failed to present to the
PCR court any evidence supporting his claim that trial counsel
should have pursued an insanity defense.  Petitioner is not
entitled to relief on this claim.

    2.   Appellate Counsel

    Petitioner contends that appellate counsel provided
ineffective assistance by failing to raise on appeal the jury-
charge claim and a claim related to inadequate translations
during trial.  Again, this Court has already determined that
there was no error in the jury charge.

    Respondents contend that the claim related to inadequate
translations during trial was not properly exhausted, because
Petitioner presented it to the state courts, for the first time,
on appeal of the denial of PCR relief.  There is no indication,
however, that the Appellate Division considered the claim barred.
The Court identified Petitioner's claim of ineffective assistance
of counsel, stated, "Our careful review of the record in the
light of the written arguments advanced by the parties discloses
that these issues are without sufficient merit to warrant
extensive discussion in this opinion," and then discussed two
specific contentions in a single paragraph, each.  This Court
construes this language as a summary rejection of Petitioner's
claim on the merits.

Petitioner has failed to explain how any incidental errors in translation, if any occurred, were of such magnitude that they deprived him of a fundamentally fair trial, and that he received ineffective assistance of appellate counsel when counsel failed to raise this claim on appeal.  On a few occasions, the interpreters did ask the Court for permission to clarify certain words, but there is no evidence that the ultimate translation was erroneous.  (Answer, 3T at 53, 54, 56, 70, 71, 93, 98, 106.) Moreover, Petitioner's trial counsel took the opportunity to point out to the jury the difficulties in translation to explain apparent inconsistencies in Petitioner's defense and his statement to police.  (Answer, 4T.)  Finally, as Petitioner failed to develop the factual basis of this claim in state court proceedings, this Court cannot now conduct a new evidentiary hearing to determine this claim.  See 28 U.S.C. § 2254(e)(2).[2] Petitioner is not entitled to relief on this claim.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.

---

[2] Petitioner contends that the state PCR court erred by failing to conduct an evidentiary hearing.  Petitioner has failed to establish, however, that he met the state-law threshold for an evidentiary hearing.  (See Answer, Ex. F and attachments; see also State v. Preciose, 129 N.J. 451 (1992) (setting forth the petitioner's burden to establish a prima facie case in order to obtain an evidentiary hearing.)

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Accordingly, no certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.   An appropriate order follows.


_____
Katharine S. Hayden
United States District Judge

Dated: 1.18.06